# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RAFAEL GERARDO RIVERA-PERAZA,
                    *Petitioner,*

v.

ERIC H. HOLDER Jr., Attorney
General,
                    *Respondent.*

No. 08-70455

Agency No.
A027-140-906

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
November 14, 2011—Pasadena, California

Filed June 29, 2012

Before: William A. Fletcher and Johnnie B. Rawlinson,
Circuit Judges, and James K. Singleton,
Senior District Judge.*

Opinion by Judge William A. Fletcher

---

*The Honorable James K. Singleton, Senior District Judge for the U.S.
District Court for Alaska, sitting by designation.

**COUNSEL**

Gregory Joseph Boult, GLECKMAN & SINGER, Los Angeles, California, for the petitioner.

Carmel Aileen Morgan, Elizabeth R. Chapman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for the respondent.

**OPINION**

W. FLETCHER, Circuit Judge:

Petitioner Rafael Gerardo Rivera-Peraza ("Rivera"), a native and citizen of Mexico, was convicted of armed robbery with a firearm in California in 1981. After serving most of his sentence, Rivera was deported in 1984. Since then, he has twice reentered this country without inspection. The government began a removal proceeding against Rivera in 2004. Rivera admitted removability and sought adjustment of status to lawful permanent resident. Because his 1981 conviction rendered him inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I), Rivera applied for a waiver of inadmissibility under § 1182(h)(1)(A) and (B). *See* 8 U.S.C. § 1255(i)(2)(A) (requiring applicant for adjustment of status to permanent resident to be admissible to the United States).

The Immigration Judge ("IJ") denied Rivera's application for waiver of inadmissibility. The Board of Immigration Appeals ("BIA") affirmed, concluding that Rivera failed to satisfy the hardship standard of 8 C.F.R. § 1212.7(d). Rivera timely filed a petition for review. For the reasons set forth

below, we conclude that the BIA properly applied § 1212.7(d) to Rivera. We therefore deny the petition.

## I. Background

Rivera entered the United States in 1976 without inspection. Five years later, he was convicted of armed robbery under California Penal Code §§ 211 and 12022. He received a six-year sentence. In 1984, after serving almost four years, he was transferred to Immigration and Naturalization Service ("INS") custody and deported to Mexico. Two days later, he reentered the United States without inspection.

In 1989, still in the United States, Rivera met and married Edelmira Herrera. The couple has three United States citizen children: Edelmira Jr. born in 1990, Rafael Jr. born in 1992, and Gabriela born in 1994. In 1994, the INS approved an I-130 visa petition that Rivera's wife, Edelmira, Sr., filed on his behalf. In March 2003, Edelmira, Sr. became a naturalized United States citizen.

In 1991, Rivera made a day trip to Mexico to visit his sick mother. When he attempted to reenter the United States he falsely claimed he was a United States citizen. The immigration officer refused admission. Rivera reentered the United States two days later without inspection.

On November 2, 2004, Rivera was served with a Notice to Appear and charged with removability for (i) being present in the United States without having been admitted or paroled and (ii) having been convicted of a crime involving moral turpitude. Rivera sought relief from removal through an application for adjustment of status under 8 U.S.C. § 1255(i). Because his wife was a United States citizen who had already obtained an I-130 visa for him, Rivera was potentially eligible for adjustment. However, Rivera's armed robbery conviction made him inadmissible under § 1182(a)(2)(A)(i)(I) (conviction of a crime of moral turpitude). Admissibility is a neces-

sary precondition for adjustment of status. 8 U.S.C. § 1255(i)(2)(A). Rivera therefore applied for a waiver of inadmissibility under § 1182(h).

An applicant for adjustment of status with a criminal record is eligible for a discretionary waiver of inadmissibility under § 1182(h) in two circumstances. First, the Attorney General has discretion to grant a waiver if the conviction occurred more than fifteen years prior to the application for adjustment of status; if admission is not contrary to the welfare, safety and security of the United States; and if the applicant has been rehabilitated. § 1182(h)(1)(A). Second, the Attorney General has discretion to grant a waiver if denial of admission would result in extreme hardship to the applicant's citizen or lawful resident spouse, parents and children. § 1182(h)(1)(B). Rivera sought a waiver under both provisions.

An Immigration Judge ("IJ") conducted a hearing at which Rivera, his wife, and his eldest daughter testified. The IJ noted that Rivera needed the following to be eligible to adjust status: (1) a waiver of inadmissibility under § 1182(h) for his 1981 armed robbery conviction, (2) permission under 8 C.F.R. § 1212.2 to return to the United States following deportation; and (3) a waiver under 8 U.S.C. § 1182(i) for his 1991 false claim to citizenship. The IJ held that Rivera failed to satisfy the first of these three requirements. He did not address the other two.

If an applicant for a waiver of inadmissibility under § 1182(h) has committed a "violent or dangerous" crime, he or she must satisfy a heightened standard set forth in 8 C.F.R. § 1212.7(d). Under that standard, the applicant must show "extraordinary circumstances" such as "exceptional and extremely unusual hardship." *Id.* The IJ concluded that Rivera's 1981 armed robbery was a "violent or dangerous" crime within the meaning of § 1212.7(d), and that Rivera did not meet the "exceptional and extremely unusual hardship" stan-

dard. Without a waiver of inadmissibility, Rivera was statutorily ineligible for adjustment of status.

The BIA affirmed. It held that the "exceptional and extremely unusual hardship" standard of § 1212.7(d) applies to discretionary waivers sought under both 8 U.S.C. § 1182(h)(1)(A) (the rehabilitation waiver) and (h)(1)(B) (the extreme hardship waiver). Under § 1212.7(d), the BIA considered the hardship to Rivera himself, as well as to his wife and children, that would result from his inadmissibility. The BIA concluded that the serious hardships to Rivera and his relatives were "outweighed" by his "very serious criminal activity" and "well-established disdain for the immigration laws under which he now seeks shelter."

Rivera filed a timely petition for review, contending that the BIA made a mistake of law in applying the hardship standard of § 1212.7(d) to his waiver application.

## II.   Jurisdiction and Standard of Review

We have jurisdiction to review "constitutional claims or questions of law raised upon a petition for review." 8 U.S.C. § 1252(a)(2)(D). The government contends that Rivera challenges only the agency's discretionary decision to deny his waiver application, and that we therefore lack jurisdiction over his petition under 8 U.S.C. § 1252(a)(2)(B)(I). However, "this contention misconceives [Rivera's] claim." *Mejia v. Gonzales*, 499 F.3d 991, 999 (9th Cir. 2007). Rivera does not merely challenge the agency's exercise of discretion. He "contends specifically that the BIA used an erroneous legal standard in [its] analysis." *Id.* We have jurisdiction to review that legal question.

"[W]e review *de novo* the BIA's determination of questions of law, except to the extent that deference is owed to its interpretation of governing statutes or regulations." *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1011 (9th Cir. 2006).

## III. Analysis

Rivera argues that the heightened hardship standard established by 8 C.F.R. § 1212.7(d) improperly raises the level of requisite hardship under § 1182(h)(1)(B) from "extreme" to "exceptional and extremely unusual." He argues, further, that § 1212.7(d) cannot "logically apply" to waivers of inadmissibility sought under § 1182(h)(1)(A) because that provision deals with lapse of time, national safety and security, and rehabilitation, rather than hardship. Finally, he argues that it is illogical to apply the hardship standard of § 1212.7(d) to waivers of admissibility sought under § 1182(h)(1)(B) because the statutory provision contains restrictive language identifying those who must suffer "extreme hardship," whereas § 1212.7(d) does not contain comparably restrictive language. *Compare* § 1182(h)(1)(B) (requiring that an alien demonstrate "extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien"), *with* § 1212.7(d) (requiring that "an alien clearly demonstrate[ ] that the denial of . . . admission . . . would result in exceptional and unusual hardship").

**[1]** Rivera's arguments are largely foreclosed by our decision in *Mejia*, 499 F.3d 991, in which we expressly rejected the contention that § 1212.7(d) altered or superseded the hardship standard of § 1182(h)(1)(B). We held that § 1212.7(d) requires that "extraordinary circumstances," such as "exceptional and extremely unusual hardship," exist for someone convicted of a "violent or dangerous crime," whether a waiver of inadmissibility is sought under § 1182(h)(1)(A) (the rehabilitation waiver) or (h)(1)(B) (the hardship waiver). *Id.* at 995. We wrote:

> The regulation does not alter or supercede the "extreme hardship" standard. Rather, the regulation supplements and gives definition to the standard to be applied in the cases of individuals who have committed violent or dangerous crimes. The Attorney Gen-

eral, in the exercise of his discretion, suggests that
the equities disfavor, although do not preclude, relief
in this circumstance. Given Congress's broad grant
of discretion, this approach is not inconsistent with
the statute or the Attorney General's authority.

*Id.* at 996.

In reaching our decision in *Mejia*, we relied in part on Fed-
eral Register commentary accompanying the regulation. *Id.* at
995 (citing 67 Fed. Reg. 78675 (Dec. 26, 2002)). In that com-
mentary, the Attorney General rejected the suggestion that the
regulation altered the hardship requirement in
§ 1182(h)(1)(B), noting that the hardship standard of
§ 1212.7(d) "does not relate to the threshold eligibility
requirement of 'extreme hardship' " in § 1182(h)(1)(B). 67
Fed. Reg. at 78677. Rather, the Attorney General wrote, the
regulation "governs only the exercise of discretion . . . *after*
the alien has met the threshold requirements." *Id.* (emphasis
added).

**[2]** Because the hardship standard of § 1212.7(d) operates
separately from the hardship standard of § 1182(h)(1)(B), it is
not "illogical" that hardship under the two standards is evalu-
ated with respect to differently defined groups of people. Sec-
tion 1182(h)(1)(B) directs the agency to consider hardship to
only the alien's lawfully admitted or citizen spouse, parents
and children. Hardship to the alien himself or herself is irrele-
vant. By contrast, § 1212.7(d) requires that "an alien clearly
demonstrate[ ] . . . exceptional and extremely unusual hard-
ship," without limiting the hardship to specified people. The
government argues to us that § 1212.7(d) properly directs the
agency to consider hardship to the alien as well as to his or
her relatives. We agree with the government. As pointed out
by the government, the BIA did precisely what it was directed
to do. The BIA recounted in its opinion that it considered "the
serious hardships likely to befall the respondent and his rela-
tives in the event of the respondent's removal."

## Conclusion

As we made clear in *Mejia*, the hardship standard of 8 C.F.R. § 1212.7(d) applies to those who have committed "violent or dangerous crimes" and who seek a waiver of inadmissibility under 8 U.S.C. § 1182(h)(1). As we make clear today, § 1212.7(d) directs the agency to consider hardship to the alien and to his or her relatives.

**PETITION FOR REVIEW DENIED.**