**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| JOSE GUADALUPE TORRES-VALDIVIAS, AKA Guadalupe Torres, *Petitioner*, | No. 11-70532 |
| v. | Agency No. A079-643-573 |
| LORETTA E. LYNCH, Attorney General, *Respondent*. | ORDER AND AMENDED OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
August 11, 2014—San Francisco, California

Filed September 5, 2014
Amended May 8, 2015

Before: Barry G. Silverman and Richard R. Clifton, Circuit
Judges, and Derrick Kahala Watson, District Judge.[*]

Order;
Opinion by Judge Clifton

---

[*] The Honorable Derrick Kahala Watson, U.S. District Judge for the
District of Hawaii, sitting by designation.

## SUMMARY[**]

### Immigration

The panel dismissed in part and denied in part Jose Guadalupe Torres-Valdivias's petition for review of the Board of Immigration Appeals' decision denying his application for adjustment of status.

The panel amended the original opinion, and denied the petition for panel rehearing and petition for rehearing en banc. The panel upheld the Board of Immigration Appeals' decision not to apply the categorical approach when making a discretionary determination such as the one here regarding whether petitioner's sexual battery conviction triggered the standard under *Matter of Jean*, 23 I. & N. Dec. 373 (Att'y Gen. 2002) (establishing a heightened standard that aliens convicted of violent or dangerous crimes must satisfy for discretionary relief). The panel upheld the BIA's application of the *Matter of Jean* standard to adjustment of status applications, and the BIA's conclusion that *Matter of Jean* applies to applications for adjustment of status in which the alien was convicted of a violent or dangerous crime. The panel further held that the ultimate determination of whether a crime is violent or dangerous under *Matter of Jean* is discretionary and therefore unreviewable under 8 U.S.C. § 1252(a)(2)(B).

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Lamar Peckham, Santa Rosa, California, for Petitioner.

Stuart F. Delery, Acting Assistant Attorney General, Civil Division, Mary Jane Candaux, Assistant Director, Kiley L. Kane, Senior Litigation Counsel, and Gary J. Newkirk (argued), Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

Mary Kenney, Washington, D.C., for Amicus Curiae American Immigration Council.

Zachary Nightingale, Avantika Shastri, and Genna Beier, Van Der Hout, Brigagliano & Nightingale, LLP, San Francisco, California, for Amicus Curiae Immigrant Legal Resource Center.

---

**ORDER**

The opinion filed September 5, 2014, is **AMENDED** as follows:

**1.** Section III.C.3, the four-paragraph section that appears on pages 15 through 17 of the slip opinion, including footnotes 4 and 5, is deleted.

**2.** The third sentence of the first full paragraph on page 4 of the slip opinion currently reads as follows:

Finally, we uphold the BIA's extension of the *Matter of Jean* standard to adjustment of status applications under 8 U.S.C. § 1255.

The sentence is amended to read as follows:

Finally, we uphold the BIA's application of the *Matter of Jean* standard to adjustment of status applications under 8 U.S.C. § 1255.

**3.** The last sentence of the first paragraph of § III.C on page 11 of the slip opinion currently reads as follows:

We disagree, and we uphold the BIA's decision to apply *Matter of Jean* to cases that would previously have been governed by *Matter of Arai*, provided the alien has been convicted of a violent or dangerous crime.

The sentence is amended to read as follows:

We disagree, and we uphold the BIA's conclusion that *Matter of Jean* applies to applications for adjustment of status under § 245 in which the alien has been convicted of a violent or dangerous crime.

**4.** The third sentence of the first paragraph of § IV on page 17 of the slip opinion currently reads as follows:

Finally, the BIA did not err in extending the *Matter of Jean* standard to the context of adjustment of status applications under 8 U.S.C. § 1255.

The sentence is amended to read as follows:

> Finally, the BIA did not err in holding that the *Matter of Jean* standard applies to the context of adjustment of status applications under 8 U.S.C. § 1255, a conclusion compelled by the published decisions in *Matter of Jean* and *Matter of K–A–*.

With these amendments, the panel has voted to deny the petition for panel rehearing. Judges Silverman and Clifton have voted to deny the petition for rehearing en banc, and Judge Watson has so recommended.

The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The Petition for Rehearing and Petition for Rehearing En Banc, filed on December 19, 2014, is **DENIED**.

No further petitions for rehearing following this amendment may be filed.

**OPINION**

CLIFTON, Circuit Judge:

Petitioner Jose Guadalupe Torres-Valdivias petitions for review of a Board of Immigration Appeals' ("BIA") decision upholding a final order of removal against him. In deciding this case, we consider the scope of the Attorney General's decision in *Matter of Jean*, 23 I. & N. Dec. 373 (Att'y Gen. 2002), which established a heightened standard that aliens convicted of violent or dangerous crimes must satisfy to be granted discretionary relief from removal.

Torres-Valdivias was placed in removal proceedings, where he applied for and was denied adjustment of status under 8 U.S.C. § 1255(i). The BIA held that Torres-Valdivias's sexual battery conviction was a violent or dangerous crime and, on that basis, applied the *Matter of Jean* standard to guide the exercise of its discretion. In making the violent or dangerous crime determination, the BIA considered the facts underlying Torres-Valdivias's sexual battery offense as testified to by Torres-Valdivias at his removal hearing and as stated in police reports from the time of the offense. Applying the *Matter of Jean* standard, the BIA denied Torres-Valdivias's adjustment of status application, as a matter of discretion.

We uphold the BIA's decision not to apply the categorical approach in the context of its discretionary decisions, such as the one at issue here. We also conclude that, where the correct legal standard is applied, the ultimate determination of whether a crime was violent or dangerous under *Matter of Jean* is discretionary and therefore unreviewable under 8 U.S.C. § 1252(a)(2)(B). Finally, we uphold the BIA's

application of the *Matter of Jean* standard to adjustment of status applications under 8 U.S.C. § 1255. Accordingly, we dismiss in part and deny in part Torres-Valdivias's petition for review.

## I. Background

Petitioner Jose Guadalupe Torres-Valdivias, a native and citizen of Mexico, has resided in the United States since coming in illegally in 1989. He married a U.S. citizen, through whom he was granted conditional permanent resident status in 2003. That status was revoked in 2006, however, as a result of a 2001 conviction for sexual battery in violation of California Penal Code § 243.4(a). Upon revocation of his status, Torres-Valdivias was charged with being an alien illegally present in the United States and therefore removable under 8 U.S.C. § 1182(a)(6)(A)(i).

In removal proceedings in front of an Immigration Judge ("IJ"), Torres-Valdivias applied for adjustment of status under 8 U.S.C. § 1255(i). In adjudicating this application, the IJ considered the facts underlying Torres-Valdivias's sexual battery conviction, including the facts as stated in his testimony at the removal hearing and as described in the police reports from the time of the offense. The facts found by the IJ are not in dispute:

> [Torres-Valdivias] first said that when he was 14 or 15, and the victim, his stepsister, was 10 or 11, he touched her on her breasts and vagina over her clothing once. He repeated this activity one more time, about a year later. He insisted he did nothing else. Later, after being confronted with the police reports in the

> case, he admitted that he touched her vagina
> while the victim was not wearing clothes. He
> subsequently admitted to forcing his finger
> into her vagina, and also getting on top of her
> and simulating sexual intercourse. [Torres-
> Valdivias] denied putting his penis into his
> stepsister's vagina and denied engaging in
> oral sex with her.

The IJ concluded that Torres-Valdivias's crime of sexual
battery "was quite clearly violent or dangerous" and applied
the heightened standard for granting discretionary relief from
removal to violent or dangerous criminals established in
*Matter of Jean*. Under this heightened standard, the IJ
concluded, as a matter of discretion, that Torres-Valdivias's
adjustment of status application should be denied and
therefore ordered him removed.

Torres-Valdivias appealed to the BIA. On appeal, a three-
member panel of the BIA agreed with the IJ's application of
the heightened *Matter of Jean* standard to an adjustment of
status application but remanded for the IJ to further analyze
whether Torres-Valdivias's offense was a violent or
dangerous crime warranting application of that standard.

On remand, the IJ incorporated his prior decision by
reference and provided more detailed facts and further legal
analysis.[1] The IJ again concluded that Torres-Valdivias's

---

[1] The IJ's full discussion of the facts on remand was as follows:

> A review of the documents in the file reveals the
> following about the circumstances of the crime. The
> victim in this case is [Torres-Valdivias's] stepsister.

crime of sexual battery constituted a violent or dangerous crime and denied, as a matter of discretion, his application for adjustment of status. The IJ again ordered Torres-Valdivias removed and certified the case back to the BIA. The BIA adopted and affirmed the IJ's decision under *Matter of Burbano*, 20 I. & N. Dec. 872 (BIA 1994).

Torres-Valdivias timely petitioned this court for review of the final order of removal entered against him.

---

> She told the police that [Torres-Valdivias] had engaged in non-consensual sexual intercourse with her at least five times, beginning when she was about five years of age and ending when she was fourteen. At the time of the last assault [Torres-Valdivias] was about nineteen years old. The victim told the police that [Torres-Valdivias] "would take her clothes off, as well as his own, and then sexually assault her. She said the suspect would place his erect penis into her vagina, kiss her mouth-to-mouth and place his mouth onto her vagina."

> [Torres-Valdivias] told the police that he had put his finger in the victim's vagina when she was nine and again when she was 12. He said he felt and kissed her breasts at least three or four times when the victim was 13 or 14 years old. He said he got on top of the victim and simulated sexual intercourse several times when she was about 9 years old. He denied having complete sexual intercourse with the victim and denied forcing any sexual acts on the victim. [Torres-Valdivias's] testimony at his removal hearing was in many respects the same as his police statement. However, he did acknowledge at the hearing that he had "force[d] his finger into her vagina" "[a] little bit."

## II. Jurisdiction and Standard of Review

The Immigration and Nationality Act ("INA") bars this court from exercising jurisdiction over various discretionary decisions of the immigration authorities, including "any judgment regarding the granting of relief under" 8 U.S.C. § 1255. 8 U.S.C. § 1252(a)(2)(B)(i). The BIA's ultimate discretionary decision to deny Torres-Valdivias adjustment of status under 8 U.S.C. § 1255(i) is therefore unreviewable. Pursuant to 8 U.S.C. § 1252(a)(2)(D), however, this court retains jurisdiction over constitutional questions and questions of law. We review questions of law de novo. *Annachamy v. Holder*, 733 F.3d 254, 258 (9th Cir. 2013).

## III.    Discussion

Torres-Valdivias's petition for review raises various issues framed as questions of law, namely: (1) whether the BIA erred in not applying the categorical approach in determining whether Torres-Valdivias's crime was violent or dangerous for purposes of applying *Matter of Jean*; (2) whether the BIA committed an error of law when it determined that Torres-Valdivias's crime was violent or dangerous; and (3) whether *Matter of Jean* is applicable in the context of an adjustment of status application under 8 U.S.C. § 1255(i).[2] With respect to the first and third issues, we agree with Torres-Valdivias that they present questions of law but

---

[2] Torres-Valdivias also argues that he was denied due process when the BIA assigned his appeal for decision by a single member. Contrary to this argument, however, his appeal was in fact assigned to a three-member panel of the BIA, composed of BIA members Edward R. Grant, Molly Kendall-Clark, and Neil P. Miller. This argument is therefore without merit.

disagree with him on the merits. With respect to the second issue, however, we conclude that it presents a challenge to a discretionary decision of the BIA and that we therefore lack jurisdiction to review it.

## A. Applicability of the Categorical Approach

The heightened standard of *Matter of Jean* applies by its own terms only to aliens convicted of violent or dangerous crimes. 23 I. & N. Dec. at 383; *see also Matter of K–A–*, 23 I. & N. Dec. 661, 666 (BIA 2004). Torres-Valdivias argues that the BIA erred by failing to apply the categorical approach in determining whether his conviction for sexual battery triggered the heightened *Matter of Jean* standard.

We disagree. Adjustment of status under 8 U.S.C. § 1255 is a discretionary form of relief. *See, e.g.*, 8 U.S.C. § 1255(i)(2) ("[T]he Attorney General *may* adjust the status of the alien to that of an alien lawfully admitted for permanent residence . . . ." (emphasis added)). In the context of the BIA's discretionary decisions, we have noted that "it is proper [for the BIA] to look to probative evidence outside the record of conviction in inquiring as to the circumstances surrounding the commission of [a] crime in order to determine whether a favorable exercise of *discretion* is warranted." *Tokatly v. Ashcroft*, 371 F.3d 613, 621 (9th Cir. 2004) (second alteration in original) (quoting *Matter of Mendez-Moralez*, 21 I. & N. Dec. 296, 303 n.1 (BIA 1996)). Indeed, in *Matter of Jean* itself, the Attorney General looked at the facts underlying Jean's conviction, including those found in a medical examiner's report—and therefore outside the records of conviction—to conclude that she was a violent or dangerous individual who should not be granted the form

of discretionary relief she had applied for. *See* 23 I. & N. Dec. at 375, 383.

It is not surprising that both our precedent and the Attorney General's decision in *Matter of Jean* counsel against the application of the categorical approach in this context. The categorical approach, as laid out in *Taylor v. United States*, 495 U.S. 575 (1990), requires a court to look only at the statutory definition of a prior offense of conviction and ignore any facts not found in judicially noticeable records of conviction. This approach applies where "Congress intended that [a certain statutory] provision be triggered by crimes having certain specified elements . . . ." *Id.* at 588. In the immigration context, this approach therefore generally applies in determining whether an alien is removable in the first instance or whether he is statutorily barred from various forms of relief. *See, e.g.*, *Tokatly*, 371 F.3d at 621 (noting that the categorical approach applies "in order to determine whether an alien's prior conviction constitutes a basis for removal under the INA"); *Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1212 (9th Cir. 2013) (applying the categorical approach to determine whether an offense constituted a crime involving moral turpitude, which would render the alien ineligible for cancellation of removal). Contrasted with questions of statutory removability and eligibility for relief, for which Congress intended specific crimes to trigger removal or statutory bars to relief, the question here is very different. In light of the discretionary language used in 8 U.S.C. § 1255(i), Congress plainly intended for the Attorney General (and, by extension, his delegate the BIA) to exercise his discretion in adjudicating applications for adjustment of status under any standards that the Attorney General (or the BIA itself) deems appropriate to establish.

In sum, the BIA's decision not to apply the categorical approach to guide the exercise of its discretion is consistent with our case law as well as with the Attorney General's and the BIA's precedential decisions. Accordingly, we uphold the BIA's refusal to apply the categorical approach in this case.

## B. *Violent or Dangerous Crime Determination*

Torres-Valdivias next contends that the BIA committed an error of law in finding that his sexual battery offense constituted a violent or dangerous crime triggering the heightened standard of *Matter of Jean*. Although framed in an attempt to present a question of law, we conclude that this argument challenges the BIA's discretionary decision to view his crime as a violent or dangerous one. We therefore lack jurisdiction to decide the merits of this argument.

At its core, this argument relies on distinguishing, on its facts, Torres-Valdivias's crime from the crime involved in *Matter of Jean*. Whereas Torres-Valdivias accepts that manslaughter, the crime involved in *Matter of Jean*, constitutes a violent or dangerous crime, he denies that sexual battery rises to the same level. A fact-intensive determination in which the equities must be weighed in reaching a conclusion is a prototypical example of a discretionary decision. Torres-Valdivias's claim therefore "fall[s] well within the BIA's discretionary authority and [is] not subject to our review." *Mejia v. Gonzales*, 499 F.3d 991, 999 (9th Cir. 2007) (citing 8 U.S.C. § 1252 (a)(2)(B)(i)).

## C. *Scope of* Matter of Jean

The most substantial question raised by Torres-Valdivias is whether *Matter of Jean* applies in the context of an

adjustment of status application under 8 U.S.C. § 1255(i).
Torres-Valdivias argues that it is not *Matter of Jean* that
applies in this context, but rather *Matter of Arai*, 13 I. & N.
Dec. 494 (BIA 1970). We disagree, and we uphold the BIA's
conclusion that *Matter of Jean* applies to applications for
adjustment of status under § 245 in which the alien has been
convicted of a violent or dangerous crime.

### 1.   *Matter of Jean* and *Matter of Arai*

*Matter of Jean* involved a refugee's applications for
adjustment of status under 8 U.S.C. § 1159(a) and for asylum
under 8 U.S.C. § 1158. 23 I. & N. Dec. at 375–76. However,
Jean was statutorily ineligible for adjustment of status due to
a manslaughter conviction, which qualified as a crime
involving moral turpitude rendering Jean inadmissible under
8 U.S.C. § 1182(a)(2)(A)(i)(I). *Id.* As a predicate to her
adjustment of status application, she was therefore also
applying for a waiver of inadmissibility under 8 U.S.C.
§ 1159(c)—the so-called § 209(c) waiver, named for the
corresponding INA section. *Id.* at 376. The BIA, balancing
the equities in the exercise of its discretion, granted her the
waiver and adjustment of status. *Id.* at 378. The Attorney
General then stepped in to reverse the BIA. *Id.* at 389. In
doing so, the Attorney General articulated the applicable
standard for guiding the BIA's exercise of discretion as
follows:

> It would not be a prudent exercise of the
> discretion afforded to me by [§ 1159(c)] to
> grant favorable adjustments of status to
> violent or dangerous individuals except in
> extraordinary circumstances, such as those
> involving national security or foreign policy

considerations, or cases in which an alien clearly demonstrates that the denial of status adjustment would result in exceptional and extremely unusual hardship.

*Id.* at 383. In addition, the Attorney General applied the same standard in denying, as a matter of discretion, Jean's application for asylum under § 1158. *Id.* at 385 ("For the same reasons articulated in the earlier discussion of the respondent's application for adjustment of status, I am highly disinclined to exercise my discretion—except, again, in extraordinary circumstances, such as those involving national security or foreign policy considerations, or cases in which an alien clearly demonstrates that the denial of relief would result in exceptional and extremely unusual hardship—on behalf of dangerous or violent felons seeking asylum.").

This standard may differ from the *Matter of Arai* standard that Torres-Valdivias argues the BIA should have applied. *Matter of Arai*, unlike *Matter of Jean*, involved the same kind of application involved in this case—namely, an application for adjustment of status under 8 U.S.C. § 1255. In that context, the BIA articulated the following standard:

Where adverse factors are present in a given application, it may be necessary for the applicant to offset these by a showing of unusual or even outstanding equities. Generally, favorable factors such as family ties, hardship, length of residence in the United States, *etc.*, will be considered as countervailing factors meriting favorable exercise of administrative discretion. In the absence of adverse factors, adjustment will

ordinarily be granted, still as a matter of discretion.

*Matter of Arai*, 13 I. & N. Dec. at 496. We proceed by assuming *arguendo* that the standards articulated in these two cases are sufficiently different so as to potentially make a difference in Torres-Valdivias's case.

### 2. *Matter of Jean* and Adjustment of Status Applications

Torres-Valdivias argues that *Matter of Jean* does not apply to him because, unlike Jean, Torres-Valdivias is not an inadmissible alien and therefore remains statutorily eligible for adjustment of status under 8 U.S.C. § 1255(i). As this case comes to us, the parties agree that his conviction for sexual battery receives the benefit of the petty offense exception to inadmissibility, 8 U.S.C. § 1182(a)(2)(A)(ii)(II). As such, Torres-Valdivias remained statutorily eligible for adjustment of status without needing to apply for a waiver of inadmissibility. Torres-Valdivias thus argues that *Matter of Jean*, which established a standard in a case involving a § 209(c) waiver of inadmissibility, is inapplicable here.

We disagree. Torres-Valdivias fails to acknowledge that *Matter of Jean* applied its standard not only in deciding the § 209(c) waiver question, but also in denying asylum under § 1158 as a matter of discretion. The scope of *Matter of Jean* is therefore not as narrow as Torres-Valdivias argues, as it plainly applies beyond the context of waivers of inadmissibility. Of note, the Attorney General has promulgated the *Matter of Jean* standard in the broader context of § 212(h) waivers of inadmissibility—which, unlike § 209(c) waivers, are not limited to refugees. *See* Waiver of

Criminal Grounds of Inadmissibility for Immigrants, 67 Fed. Reg. 78,675 (Dec. 26, 2002) (codified at 8 C.F.R. § 1212.7(d)).[3]

Given the broad language employed by the Attorney General in *Matter of Jean* and its focus on his discretion, we uphold the BIA's broad reading of *Matter of Jean*. In *Matter of Jean*, the Attorney General effectively overruled the BIA's practice of granting discretionary forms of relief to aliens having been convicted of violent or dangerous crimes. Whether an alien applying for relief from removal has shaken a baby to death as in *Matter of Jean* or has committed sexual battery of a ten-year-old as in this case, the Attorney General has determined that these are reprehensible aliens to whom relief should be denied in all but the most extraordinary circumstances. *Matter of Jean* by its own terms is not limited to the waiver of inadmissibility context, as it also applied its standard to denying Jean's application for asylum as a matter of discretion. This broad reading of *Matter of Jean* is further supported by the BIA's published decision in *Matter of K–A–*, 23 I. & N. Dec. 661 (BIA 2004), which noted that "[t]he Attorney General has communicated in unequivocal terms that he is not inclined to exercise his discretion favorably with respect to aliens who have been convicted of dangerous or violent crimes except in the most exceptional circumstances." *Id.* at 666 (citing *Matter of Jean*, 23 I. & N. Dec. at 383).

---

[3] Torres-Valdivias's argument that the application of *Matter of Jean* reads 8 C.F.R. § 1212.7(d) into the petty offenses exception to inadmissibility, 8 U.S.C. § 1182(a)(2)(A)(ii)(II), is without merit. The BIA did not apply *Matter of Jean* to find Torres-Valdivias inadmissible notwithstanding the statutory petty offense exception; instead, it applied *Matter of Jean* to guide the exercise of its ultimate discretion as to whether to grant Torres-Valdivias adjustment of status under 8 U.S.C. § 1255(i).

## IV.    Conclusion

We uphold the BIA's decision not to apply the categorical approach in guiding its discretion to determine whether a crime is violent or dangerous for purposes of *Matter of Jean*. The BIA's ultimate decision that a crime is in fact violent or dangerous is a discretionary decision, which this court lacks jurisdiction to review. Finally, the BIA did not err in holding that the *Matter of Jean* standard applies to the context of adjustment of status applications under 8 U.S.C. § 1255, a conclusion compelled by the published decisions in *Matter of Jean* and *Matter of K–A–*.

In accordance with our holdings, we dismiss the petition for review for lack of jurisdiction insofar as it challenges the BIA's discretionary determination that Torres-Valdivias's sexual battery offense is a violent or dangerous crime. We further deny the petition for review insofar as it challenges the BIA's failure to apply the categorical approach and its application of the heightened *Matter of Jean* standard.

**PETITION FOR REVIEW DISMISSED in part and DENIED in part.**